UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGEL KIM TOMCZAK,

                                        Plaintiff                    DECISION AND ORDER

-vs-
                                                                     1:19-CV-0800 CJS

COMMISSIONER OF SOCIAL
SECURITY,

                                        Defendant.

_____

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant")

which denied the application of Angel Tomczak for Social Security Disability Insurance

("SSDI") benefits.   Now before the Court is Plaintiff's motion (ECF No. 8) for judgment

on the pleadings and Defendant's cross-motion (ECF No. 9) for the same relief.   For

the reasons discussed below, Plaintiff's application is denied, Defendant's application is

granted, and this action is dismissed.

STANDARDS OF LAW

The Commissioner decides applications for SSDI benefits using a five-step

sequential evaluation:

> A five-step sequential analysis is used to evaluate disability claims. *See*
> 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers
> whether the claimant is currently engaged in substantial gainful activity. If
> he is not, the Commissioner next considers whether the claimant has a
> severe impairment which significantly limits his physical or mental ability to
> do basic work activities. If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence, the claimant

1

has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[1]  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted)

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.   In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).   In relevant part, Section 405(g) states that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will

---

[1]  Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original). "An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered. *Id.*

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted).

3

In applying this standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted).

## FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will refer to the record only as necessary for purposes of this Decision and Order.

On September 12, 2015, Plaintiff, who has a master's degree[2] in accounting and previously worked as an accountant, applied for disability benefits, claiming that she became disabled on November 1, 2014.   Plaintiff had voluntarily stopped working as an accountant in or about April 2014 in order to provide care to her husband, who was seriously ill but has since recovered.   Plaintiff maintains that "she didn't go back to work after that because she was diagnosed with fibromyalgia and couldn't sit or stand too long and couldn't type like she used to [do] or do input on the computer."[3]

Plaintiff's primary complaints were of pain in the neck, back and hips, but a few

---

[2] Administrative Transcript at p 46.
[3] Pl. Memo of Law, ECF No. 8-1 at p. 9; Administrative Transcript at p. 47.

months prior to the administrative hearing she also began having pain and neurological symptoms in her hands with repetitive activity.   Plaintiff also claimed to have headaches, irritable bowel syndrome that was "under control" with medication, and intermittent "bursitis" in her right shoulder.   Plaintiff indicated that she felt angry and depressed about her medical conditions.

For medication, Plaintiff was taking Gabapentin and a muscle relaxer at night to help her sleep, and Motrin and Tylenol during the day for pain and headaches.[4]  She had previously tried Lyrica and Cymbalta without benefit.

On May 2, 2017, Plaintiff's rheumatologist noted that Plaintiff was complaining of significant joint pain "all over," and that her diagnosis was fibromyalgia, since she met the criteria for that diagnosis and her pain could "not be attributed to another etiology."[5] On June 16, 2017, Plaintiff's primary care physician reported that Plaintiff's fibromyalgia symptoms were "generally well controlled with medication."[6]

In connection with her application for benefits, Plaintiff had two internal medicine consultative examinations at the Commissioner's request, one in 2015 and the other in 2017.   Notably, the second consultative examination took place after the administrative hearing, evidently in response to Plaintiff's testimony that she had developed neurologic symptoms in her hands shortly before the hearing.[7]   Neither consultative examiner disputed the fibromyalgia diagnosis, and, indeed, both examiners reported finding

---

[4] Administrative Transcript at p. 48.
[5] Administrative Transcript at pp. 310, 312, 343.
[6] Administrative Transcript at p. 305.
[7] Following the hearing, the ALJ also obtained additional medical records that Plaintiff had not submitted.

5

positive fibromyalgia trigger points, with the second examiner reporting that Plaintiff was positive for seventeen out of eighteen possible trigger points.   However, both consultative exams were otherwise completely unremarkable, with testing indicating that Plaintiff had full range of motion, full strength and no musculoskeletal or neurological deficits.[8]   The first consultative examiner, Abrar Siddiqui, M.D. ("Siddiqui"), opined that Plaintiff had only mild to moderate limitations in sitting, standing, climbing, pushing, pulling or carrying heavy objects, while the second examiner, Russel Lee, M.D. ("Lee"), concluded that Plaintiff had "moderate limitation to tasks involving reaching, climbing stairs, bending, lifting, carrying heavy objects, walking great distances, and prolonged standing."[9]   Lee further quantified his opinion by completing a 5-page functional assessment form.[10]   At the second consultative exam, Plaintiff reportedly told Lee that despite her pain, which was constant but ranged in intensity between 4 and 8 on a scale of 1 to 10, she could nevertheless "sit for about an hour, stand for about 30 minutes, walk for 15 minutes, and climb one flight of stairs slowly if there is a railing present."[11]

---

[8]  Administrative Transcript at p. 390. The only positive finding of abnormality was that at the first consultative exam, Plaintiff's blood pressure was slightly elevated.

[9]  Administrative Transcript at p. 391.

[10]  Administrative Transcript at pp. 392-397. In her Memorandum of Law, ECF No. 8-1 at p. 6, Plaintiff summarizes Lee's specific findings as follows: "Dr. Lee opined that Plaintiff could lift up to 10 pounds frequently, 11-20 pounds occasionally, and never 21+ pounds, and she could occasionally carry between 0 to 20 pounds, and never 21+ pounds. (Tr. 392). He opined that Plaintiff could sit for 1 hour at a time for a total of 5 hours per day, she could stand 30 minutes at a time for a total of 2 hours per day, and walk 15 minutes at a time for a total of 1 hour per day. (Tr. 393). He opined that Plaintiff could frequently bilaterally reach, handle, finger, and feel, and only occasionally push/pull with the right hand but frequently with the left, and she could frequently bilaterally operate foot controls. (Tr. 394). He opined that Plaintiff could never climb ladders or scaffolds and crawl, and she could occasionally climb stairs and ramps, balance, stoop, kneel, and crouch, and she could not abduct greater than 110 degrees with the shoulders. (Tr. 395). He opined that Plaintiff could never be exposed to unprotected heights, moving mechanical parts, dust, odors, fumes, and pulmonary irritants, and extreme cold and extreme heat, and she could frequently operate a motor vehicle and be exposed to humidity, wetness, and vibrations. (Tr. 396)."

[11]  Administrative Transcript at p. 388.

The reports of the consultative examiners are the only medical opinion evidence of record.

On April 19, 2018, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the alleged disability onset date and the date of the decision.[12]   Applying the familiar five-step sequential evaluation set forth earlier, the ALJ found that: Plaintiff had not engaged in substantial gainful activity since the alleged onset date; Plaintiff had severe impairments consisting of fibromyalgia, migraine headaches and depression; Plaintiff had other impairments that were not severe, namely, irritable bowel syndrome, right hand pain and right shoulder pain; Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment; Plaintiff had the RFC to perform light work that, *inter alia*, was not complex or fast paced, and that would allow Plaintiff to be off task up to 5% of the day[13]  and change position briefly every 30 minutes; Plaintiff was not able to perform her past relevant work; but considering Plaintiff's age, education, work experience and RFC, there were other jobs that she could perform.

Plaintiff contends that the ALJ's determination must be reversed because it contains legal error and is not supported by substantial evidence.   As discussed in greater detail below, Plaintiff alleges that the ALJ "improperly substituted her own lay interpretation of bare medical findings [for that of trained medical professionals], [which was] especially flawed because of fibromyalgia's lack of objective findings," and

---

[12]  The ALJ, the Hon. Lisa Martin, issued her decision following a hearing at which Plaintiff appeared pro se, and at which both Plaintiff and a vocational expert ("VE") testified.

[13]  The VE testified that being off task 5% of the day is generally tolerated by employers.

"improperly discounted the opinion evidence of record, and failed in her duty to develop the record and re-contact [the consultative examiners after] she determined that [their] opinions contained inconsistencies."[14]

The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

DISCUSSION

Plaintiff's arguments all involve the RFC determination made by the ALJ, which was as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except as follows. The claimant needs a position change opportunity as often as every 30 minutes for one to two minutes, she is limited to frequent, but not constant, upper extremity reaching, handling, and fingering tasks, she is precluded from all ladder, rope, or scaffold climbing, and she is limited to occasional postural motions otherwise. The claimant is precluded from all dangerous work hazards (such as unprotected heights and exposed moving machinery), and she is precluded from all exposure to extreme heat, humidity, and cold conditions. She is limited to detailed, but not complex, work tasks not requiring a fast assembly quota pace. The needs a work setting that will tolerate up to 5% off task behavior during the work day.

Administrative Transcript at p. 28.

As a preliminary matter, the Court points out that Plaintiff has not challenged any *particular* aspect of this RFC determination as being incorrect or unsupported by substantial evidence.   Plaintiff does not attempt to argue, for example, that she cannot actually perform light work due to any particular exertional limitation, such as the

---

[14] Pl. Memo of Law, ECF No. 8-1 at p. 11.

inability to lift, sit or stand, or that she actually requires a job that would allow her to be
off task more than 5% of the day.   Rather, Plaintiff only broadly challenges the RFC, as
a whole, as having been formulated in the wrong manner, namely, that it allegedly gave
too little weight to the opinions of Siddiqui and Lee for the wrong reasons, leaving the
RFC finding without support from medical opinion evidence.

       The Court also observes that while Plaintiff maintains that the ALJ improperly
evaluated the consultative opinions, she does not allege that either Siddiqui or Lee
indicated that she was unable to work.   In other words, while Plaintiff argues that it was
wrong for the ALJ to give only "some weight" to the opinions of Siddiqui and Lee, she
does not argue that she necessarily would have been found disabled if the ALJ had
given more weight, or even controlling weight, to those opinions.   Nor could Plaintiff
properly make such an argument, since neither doctor indicated that she had limitations
of disabling severity.

       In any event, as mentioned earlier Plaintiff maintains that the ALJ erroneously
substituted her own lay opinion of "bare medical findings" for the opinions of Siddiqui
and Lee insofar as she found that limitations related to fibromyalgia must be supported
by objective findings.[15]   Related to that, Plaintiff further indicates that there is no
medical opinion supporting the ALJ's "highly specific" RFC finding, and that the ALJ
must therefore have improperly relied on her own lay expertise to interpret "bare

---

[15] It is well settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion," and that "[w]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) (citations omitted).

medical findings" in making that finding.[16]   Additionally, Plaintiff argues that insofar as the ALJ found inconsistencies in the two medical opinions, she had a duty to re-contact the doctors.   Finally, Plaintiff contends that the ALJ failed to "conduct a function-by-function assessment" or to "cite to any medical evidence that provided any useful assessment of Plaintiff's functioning" when making the RFC determination.[17]   However, the Court disagrees.

Plaintiff's central argument is that the ALJ erroneously substituted her own lay opinion of "bare medical findings" for the opinions of Siddiqui and Lee.   Plaintiff's premise for this argument is that the ALJ "discounted" both of the expert opinions because they were not supported by objective findings, which was erroneous since cases of fibromyalgia often lack objective findings: "For the ALJ to discount these opinions because of the lack of objective findings in the examination and in the medical evidence is completely improper and ignores the law of this Court and the very nature of fibromyalgia."[18]   By the term "discount," Plaintiff evidently means that the ALJ "improperly diminished the weight given to the [opinions]."[19]   Essentially, Plaintiff's argument is that the ALJ looked at the results of the consultative doctors' physical

---

[16] On this point Plaintiff's argument is essentially this: There were only two medical opinions in the record; the ALJ did not give controlling or significant weight to either of those opinions, but instead gave "some weight" to both of the opinions; therefore, the RFC finding must be based on the ALJ's own interpretation of the medical evidence, rather than on competent medical opinion. See, Pl. Reply, ECF No. 10 at p. 2 ("W[here, as here, the ALJ does not give controlling or significant weight to any of the medical opinions of record and instead gives 'some weight' or 'limited weight' to all the opinions, it is reasonable to assume that the ALJ must have relied upon the raw medical data to form his own 'common sense' RFC.").

[17] Pl. Memo of Law, ECF No. 8-1 at p. 17.   Plaintiff admits that "remand is not required simply because the ALJ failed to conduct an explicit function-by-function analysis," but argues that remand is required when "inadequacies in the ALJ's analysis frustrate meaningful review." Pl. Memo of Law, ECF No. 8-1 at p. 18.

[18] Pl. Memo of Law, ECF No. 8-1 at p. 15.

[19] Pl. Memo of Law, ECF No. 8-1 at p. 12.

examinations, *i.e.*, the "bare medical findings," and interpreted them to reach a medical opinion that was different than, and, specifically, *less restrictive than*, that of either doctor. *See*, Pl. Memo of Law, ECF No. 8-1 at p. 16 ("[T]he ALJ discounted *more limiting* medical opinions for improper reasons[.]") (emphasis added).

However, the factual premise of that argument is incorrect, since the ALJ's RFC finding is actually more restrictive than what Siddiqui indicated.   In this regard, Plaintiff assumes that when giving both of the opinions only "some weight," the ALJ went on to find that Plaintiff was less restricted in her abilities than either doctor had indicated. However, that is not true.[20]   From the Court's reading of the decision, the ALJ found that Plaintiff was more restricted than Siddiqui had indicated, but less restricted than Lee had indicated.   Because of that, the ALJ gave only "some weight" to each opinion. In the Court's view, the RFC finding falls somewhere in the middle between the two opinions, though it essentially tracks Lee's detailed functional assessment in most respects, except with regard to Plaintiff's ability to walk and stand, as to which the ALJ seems to have found that Plaintiff could do more than what Lee indicated.[21]   Siddiqui,

---

[20]  Plaintiff's misunderstanding of this point is understandable, as the ALJ's explanation of her different treatment of the two opinions could have been clearer.   Although, it is unclear to the Court why Plaintiff believes that Siddiqui's opinion, which found only mild to moderate limitations in some areas, is more restrictive than the ALJ's RFC finding.

[21]  The ALJ stated that she found Lee's "assessment of rather limited standing and walking abilities" to be inconsistent with the record as a whole. Consequently, while Lee indicated that Plaintiff could stand and walk for only three hours per workday, the ALJ found that Plaintiff could perform light work, which generally requires more walking and standing than three hours: "'[Light work] generally requires 'a good deal of walking or standing, for a total of approximately 6 hours of an 8–hour workday.'" *Michaels v. Colvin*, 621 F. App'x 35, 40 (2d Cir. 2015) (emphasis added, citations omitted).   However, light work does not absolutely require a claimant to be able to stand and walk longer than three hours per workday. *See*, 20 C.F.R. § 404.1567 (Indicating that "a job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.") (emphasis added).   Apart from partially disagreeing with Lee's standing and walking restriction, the ALJ seems to have otherwise accepted Lee's opinion.

on the other hand, did not indicate that Plaintiff had any restriction with regard to walking.[22]

Consequently, the Court concludes that Plaintiff's arguments all lack merit, since they are all based on a fundamental misunderstanding of how the ALJ treated the two medical opinions.   Specifically, rather than "discounting" both opinions because they contained fibromyalgia-related limitations that were not supported by objective medical findings, the ALJ arrived at an RFC finding that was a compromise between the two opinions.   To the extent that the RFC finding was less restrictive than Lee's opinion, it was nevertheless supported by substantial evidence, namely, by Siddiqui's opinion that Plaintiff had only mild to moderate limitations in sitting, standing, climbing, pushing, pulling or carrying heavy objects.

An ALJ is entitled to make an RFC finding that is consistent with the record as a whole, even if it does not perfectly match a particular medical opinion. *See, Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (Rejecting argument that ALJ had improperly substituted his medical judgment for expert opinion, stating that: "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also, Camille v. Colvin*, 652 F. App'x 25, 29 n. 5 (2d Cir. 2016) ("The ALJ used Dr. Kamin's opinion as the basis for the RFC but incorporated additional limitations based on, inter alia, the

---

[22] Administrative Transcript at p. 245.   Accordingly, to the extent that Plaintiff maintains that the walking and standing aspects of the RFC finding are unsupported by substantial evidence, the Court disagrees and finds that they are supported by Siddiqui's opinion.

testimony of Camille that she credited. An ALJ may accept parts of a doctor's opinion and reject others.") (citations omitted).

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 8) is denied, Defendant's cross-motion (ECF No. 9) for the same relief is granted, and this matter is dismissed.   The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
        September   9, 2020

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

13